**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LAWRENCE J. SMITH,

                              Plaintiff,                    9:24-cv-01562 (BKS/MJK)

v.

New York State Corrections Officer AITEHENSON,
individually and in his official capacity; New York State
Correction Officer SWAN, individually and in his official
capacity; New York State Correction Officer HARGET,
individually and in his official capacity, and THOMAS
GEE, Superintendent of Cayuga Correctional Facility,
individually and in his official capacity,

                              Defendants.

**Appearances:**

*For Plaintiff:*
Walter J. Thompson
Thompson Law, P.C.
565 Fifth Avenue, Suite 721
New York, NY 10017

*For Defendants Swan, Hargett, and Gee:*
Letitia James
Attorney General for the State of New York
Elizabeth Lombardi
Assistant Attorney General, of Counsel
300 S. State Street, Ste. 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

### MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Plaintiff Lawrence J. Smith brings this action under 42 U.S.C. § 1983 and New York law

against New York State Corrections Officers Tyler Aitcheson, Thomas Swan, and Zachary

1

Hargett,[1] and Superintendent of Cayuga Correctional Facility Thomas Gee, each in their individual and official capacities. (Dkt. No. 1). The Complaint alleges numerous violations of state and federal law stemming from an incident that occurred on the morning of September 13, 2022, at Cayuga Correctional Facility. (*See id.*). Presently before the Court is Defendants Swan, Hargett, and Gee's partial motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. No. 26).[2] The motion is fully briefed. (*See* Dkt. Nos. 26-1, 31, 32). For the reasons that follow, Defendants' motion is granted in part and denied in part.

## II.     BACKGROUND[3]

On September 13, 2022, Plaintiff was "under the care, custody, and control of" Defendants Aitcheson, Swan, and Hargett at Cayuga Correctional Facility. (Dkt. No. 1, ¶¶ 31, 32, 41). Defendants Aitcheson, Swan, and Hargett were all Corrections Officers employed by the New York Department of Corrections and Community Service. ("DOCCS"). (*Id.* ¶¶ 8, 9). Defendant Gee was also employed by DOCCS as the superintendent of Cayuga Correctional Facility. (*Id.* ¶¶ 8, 30).

At approximately 7:52 A.M., "Plaintiff was stopped and 'wanded' three times" by Aitcheson, Swan, and Hargett. (*Id.* ¶ 32). "After being 'wanded' for the third time," Plaintiff "asked for a sergeant to be present." (*Id.* ¶ 33). After Plaintiff made his request, Aitcheson, Swan, and Hargett "retaliated by pushing [Plaintiff] into a cell." (*Id.* ¶ 34). "Thereafter[,] they handcuffed [Plaintiff] and beat him about the back and body." (*Id.*). "Defendants had handcuffed

---

[1] Defendants have informed the Court that "Aitehenson" as alleged in the Complaint has been identified as "Correction Officer Aitcheson," (Dkt. No. 11, at 1 n.1), and that "Harget" has been identified as "Correction Officer Hargett," (*Id.* at 1 n.2). The Clerk is requested to change the names on the docket, and the Court has used the corrected names. Plaintiff has not yet effected service on Defendant Aitcheson. (Dkt. Nos. 21, 25).

[2] On March 27, 2025, the Court granted defense counsel's request to withdraw as counsel for Defendant Aitcheson. (*See* Dkt. Nos. 12; 13).

[3] These facts are drawn from the Complaint. (Dkt. No. 1). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

and shackled [ ] Plaintiff so tightly that his skin broke on both his ankles." (*Id.* ¶ 35). "One of the Defendant Corrections Officers jumped on [ ] Plaintiff, while another jammed [ ] Plaintiff's head against the wall." (*Id.* ¶ 36). "One of the Defendant Corrections Officers grabbed Plaintiff's finger and bent it backwards until it snapped." (*Id.* ¶ 37). "One or more" of the Defendants "observed the assaults upon Plaintiff and failed to intervene to prevent" this use of force against Plaintiff. (*Id.* ¶ 46). None of the three Defendant Corrections Officers called for medical assistance "following the beating inflicted upon Plaintiff." (*Id.* ¶¶ 47-49).

"Following this attack," Plaintiff "was denied medical attention for two weeks" "despite making repeated requests." (*Id.* ¶ 38). "After two weeks, Plaintiff was taken to medical, and his hand was x-rayed." (*Id.* ¶ 39). "[A]nother week passed before anyone read the x-ray and confirmed that Plaintiff's left pinky finger had been broken." (*Id.*). "Thereafter, Plaintiff was sent to Cayuga Medical Center for diagnosis and surgery. Plaintiff had two surgeries to repair his broken finger." (*Id.* ¶ 40).

"[U]pon information and belief[,]" Superintendent Gee "failed to take remedial action including filing of internal department charges against the culprits who committed the aforesaid acts[,] failed to refer the matter for prosecution and otherwise engaged in a cover-up of the assault upon the Plaintiff." (*Id.* ¶ 50). Plaintiff also "is informed and believes" that Defendant Gee "facilitated, permitted, ratified and condoned similar acts of violence against detainees[,] and "failed to take steps to terminate" such practices. (*Id.* ¶¶ 100, 101).

## III.    STANDARD

Under Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for granting a Rule 12(c) motion for judgment on the

pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim."
*Lively v. WAFRA Inv. Adv. Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Thus, "[t]o survive a Rule 12(c) motion, [the plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief . . . calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Id.* (alteration in original) (quoting *Lynch*, 952 F.3d at 75). "In making this assessment, [the Court] 'draw[s] all reasonable inferences in [the plaintiff's] favor.'" *Id.* (third alteration in original) (quoting *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)). "[J]udgment on the pleadings is not appropriate if there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial." *Id.* (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019).

## IV.     DISCUSSION

Plaintiff asserts eight causes of action against Defendants Aitcheson, Swan, and Hargett: (1) a New York state law claim for assault and battery; (2) a New York state law claim for negligent infliction of emotional distress; (3) a New York state law claim for negligence; (4) an excessive force claim under § 1983 ; (5) a failure to intervene claim under § 1983; (6) First and Fifth Amendment violations; (7) Equal Protection claims; and (8) a punitive damages claim. Plaintiff also asserts a "Supervisory and Municipal Liability" claim against Defendant Gee. (*See generally* Dkt. No. 1).

### A.     Official Capacity Claims

As a preliminary matter, Defendants contend that any claims against them in their official capacities as DOCCS employees must be dismissed as barred by the Eleventh Amendment. (Dkt. No. 26-1, at 11). Plaintiff argues that "[s]overeign immunity does not shield individual officers from liability for their own unconstitutional conduct[,]" but appears to concede that "claims for damages against the State or against officers in their official capacities" are barred by the Eleventh Amendment[.]" (Dkt. No. 31, at 6). The Court agrees.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against their own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI; *see also Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Further, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* at 366 (citation omitted).

"It is well settled that 'DOCCS is an arm of the state' and entitled to sovereign immunity as if it were the State of New York." *Brown v. New York*, No. 17-cv-1036, 2018 WL 3130593, at *3, 2018 U.S. Dist. LEXIS 106347, at *6 (N.D.N.Y. June 26, 2018) (quoting *Johnson v. New York*, No. 10-cv-9532, 2012 WL 335683, *1, 2012 U.S. Dist. LEXIS 12105, at *2 (S.D.N.Y. Feb. 1, 2012)). Eleventh Amendment immunity from suit further extends to DOCCS employees sued under § 1983 for damages in their official capacities. *See Marshall v. Lilley*, No. 19-cv-11829, 2020 WL 905989, at *6, 2020 U.S. Dist. LEXIS 32007, at *14 (S.D.N.Y. Feb. 21, 2020) ("[T]he Eleventh Amendment bars any official-capacity claim for damages under § 1983 against

these defendants, who are all DOCCS employees and thus state agents."); *Brooks v. New York*, No. 22-cv-6283, 2022 WL 4586044, at *3, 2022 U.S. Dist. LEXIS 177792, at *5 (S.D.N.Y. Sept. 29, 2022) (dismissing claims against the State of New York and against the individual defendant New York State officials, in their official capacities, "for lack of subject-matter jurisdiction under the doctrine of Eleventh Amendment immunity"). Accordingly, the Court dismisses Plaintiff's claims against Defendants Swan, Hargett and Gee in their official capacity as barred by the Eleventh Amendment.[4]

### B.    State Law Claims

Defendants argue that Plaintiff's claims for assault and battery, negligent infliction of emotional distress, and negligence under New York state law must be dismissed, because New York Correction Law § 24 provides that "tort claims against prison officials can only be brought in the Court of Claims for the State of New York." (Dkt. No. 26-1, at 14, 16). Plaintiff disagrees, arguing that "New York law makes clear that immunity does not apply to actions 'undertaken wholly for personal reasons' or in violation of lawful authority." (Dkt. No. 31, at 7 (citing *Beauchamp v. City of New York*, 771 N.Y.S.2d 129 (N.Y. App. Div. 2004); *Arteaga v. State*, 527 N.E.2d 1194, 1199 (N.Y. 1988))).[5]

New York Correction Law § 24(1) provides in pertinent part:

---

[4] In the alternative, Defendants assert that the official capacity claims must be dismissed because Defendants are entitled to qualified immunity. (Dkt. No. 26-1, at 11-13). It is not clear to the Court whether Defendants intended to assert a qualified immunity defense *only* as to claims against the Defendants in their official capacities, and not their individual capacities. In any event, qualified immunity is "an affirmative defense on which the defendant officials bear the burden of proof[.]" *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). For a qualified immunity defense asserted in a motion to dismiss to be successful, the "facts supporting the defense [must] appear on the face of the complaint[.]" *McKenna v. Wright*, 386 F.3d 432, 434, 436 (2d Cir. 2004). Defendants do not cite any facts in support of their assertion that "[i]t was objectively reasonable for the individual defendants to believe their conduct was lawful." (Dkt. No. 26-1, at 13). Accordingly, Defendants are not entitled to qualified immunity at this stage of the litigation.

[5] The Court notes that the quoted text in Plaintiff's opposition brief does not actually appear in *Beauchamp*—in fact, *Beauchamp* does not address immunity under New York law at all. *See* 771 N.Y.S.2d at 131.

> No civil action shall be brought in any court of the state . . . against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

"Section 24 provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment, and requires that such actions be brought in the New York Court of Claims as a claim against the state." *Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013); *accord Alke v. Adams*, 826 F. App'x 4, 7 (2d Cir. 2020). "Such immunity is available whether the action is pursued in a state court or, under pendent jurisdiction, in a federal court." *Parris*, 947 F. Supp. 2d at 365 (quoting *Ierardi v. Sisco*, 119 F.3d 183, 187 (2d Cir. 1997).

Under New York law, an employee's act is within the scope of their employment if "the act was done while the servant was doing [their] master's work, no matter how irregularly, or with what disregard of instructions." *Ierardi*, 119 F.3d at 187 (citing *Riviello v. Waldron*, 391 N.E.2d 1278, 1281 (N.Y. 1979)). Among the factors the court must consider are "the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could reasonably have anticipated." *Id.* (citing *Riviello*, 391 N.E.2d at 1281).

Courts have routinely found that the use of excessive force against an inmate does not render the conduct outside of the scope of employment, unless the force was for purely personal reasons and a "substantial departure from the normal methods of performing his duties." *See Gore v. Kuhlman*, 630 N.Y.S.2d 141, 142 (N.Y. App. Div. 1995) ("It is well settled that conduct which occurs during the course of employment will not be considered to have occurred within

7

the scope of employment if, for purely personal reasons unrelated to the employer's interests, the employee engages in conduct which is a substantial departure from the normal methods of performing his duties"); *see also Ierardi*, 119 F.3d at 188 (distinguishing this case from others in which "the officers involved were endeavoring to do their job—perhaps poorly—at the time of the charged transgressions," and were therefore acting within the scope of their employment); *Ames v. New York Dep't of Corr. & Cmty. Supervision*, No. 12-cv-01487, 2015 WL 4126326, at *14, 2015 U.S. Dist. LEXIS 91698, at *33 (N.D.N.Y. Mar. 24, 2015) (dismissing state law claims against the defendant correction officers on the ground that they were barred by New York Correction Law § 24, finding that the alleged inappropriate filing of misconduct reports and excessive use of force are "not departures great enough to remove [defendants'] actions from within the scope of their employment").

Here, Plaintiff has not alleged facts from which the Court could plausibly infer that Defendants were acting outside the scope of their employment. In fact, Plaintiff specifically and repeatedly alleges that "at all times" mentioned in the Complaint, Defendants were "acting within the scope of [their] employment by the DOCCS[.]" (Dkt. No. 1, ¶¶ 11-13, 18-19, 21-22, 24-25). The Complaint contains no allegations that Defendants acted "purely for personal reasons" or otherwise outside the normal methods of performing their duties. *See Gore*, 630 N.Y.S.2d at 142. Accordingly, Plaintiff's state law claims against Defendants in their individual capacities are dismissed. *Brown*, 2018 WL 3130593, at *5, 2018 U.S. Dist. LEXIS 106347, at *11 ("The alleged assault and battery arise out of actions taken while Defendant Cornell was searching Plaintiff for contraband. This was clearly within the scope of a prison guard's employment and thus is barred."); *Povoski v. Artus*, No. 11-cv-120, 2014 WL 1292219, at *2, 2014 U.S. Dist. LEXIS 41577, at *4 (N.D.N.Y. Mar. 28, 2014) (dismissing state law claims for

assault, battery and negligent infliction of emotional distress against defendant DOCCS employees; defendants were acting under color of state law at all times relevant to the complaint); *Ramos v. Artuz*, No. 00-cv-0149, 2001 WL 840131, at *6, 2001 U.S. Dist. LEXIS 10327, at *16 (S.D.N.Y. July 25, 2001) (dismissing negligence claim against defendant corrections officers as barred by New York Correction Law § 24).[6]

### C.    Excessive Force and Failure to Intervene

In his fourth and fifth causes of action, Plaintiff asserts excessive force and failure to intervene claims under § 1983 against Defendants Aitcheson, Swan, and Hargett. (Dkt. No. 1, at 10-11). While Plaintiff specifies that his excessive force claims arise under the Eighth[7] Amendment, he does not expressly state what law governs his failure to intervene claims. (*See id.* ¶ 78). Plaintiff also does not clearly allege whether he was a convicted inmate or a pretrial detainee while he was "under the care, custody, and control of Defendants[.]" (*See id.* ¶ 41). The difference is material, because if Plaintiff was a pretrial detainee rather than a convicted inmate, his claims would be governed under the Fourteenth Amendment—not the Eighth. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) ("A pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eight Amendment.").

In any event, Plaintiff appears to concede in his opposition brief that the Eighth Amendment is "the operative constitutional standard for excessive force, failure to intervene, and

---

[6] Because the Court finds that Plaintiff's state law claims are barred by New York Correction Law § 24, the Court does not reach Defendants' arguments as to the merits of Plaintiff's state law claims.

[7] Plaintiff's cause of action for excessive force also references the Fourth Amendment, but neither the allegations in the Complaint nor the parties' briefing suggests that Plaintiff intended to bring an action for excessive force under the Fourth Amendment—which would not, in any event, apply to the facts alleged in the Complaint. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). ("Arrestees may invoke the Fourth Amendment's prohibition against 'unreasonable' seizures. Those incarcerated for a criminal conviction draw on the Eighth Amendment's ban on 'cruel and unusual punishments.' Meanwhile, pretrial detainees and non-incarcerated persons rely on the constitutional guarantee of 'due process.'" (internal citations omitted)).

deliberate indifference to medical needs claims brought by convicted prisoners[,]" and asserts that "Plaintiff has properly invoked the Eighth Amendment as the principal basis for his claims[.]" (Dkt. No. 31, at 8). Plaintiff has not alleged any facts in the Complaint that suggest he was a pretrial detainee. As such, the Court agrees with Defendants' contention that "any excessive force or failure to intervene claims by Plaintiff, under the fourth and fifth causes of action, would be brought under the Eighth Amendment[.](Dkt. No. 26-1, at 18).[8]

### D.      Claims Against Defendant Gee

Defendants move to dismiss the claim against Defendant Gee, because Plaintiff has "not pled any allegations that [Gee] was personally involved" in any of Plaintiff's alleged constitutional violations, or that Gee "knew of and disregarded an excessive risk of harm to Plaintiff's safety." (Dkt. No. 26-1, at 26, 30). Plaintiff disagrees, arguing that he has properly alleged Gee "facilitated, permitted, ratified, and condoned the use of excessive force and failed to properly train and discipline officers." (Dkt. No. 31, at 10).

The only claim against Defendant Gee is Plaintiff's eighth cause of action for "supervisory and municipal liability – failure to train, discipline, terminate [and] deliberate indifference" under 42 U.S.C. § 1983. (Dkt. No. 1, at 13). Plaintiff asserts that Defendant Gee is liable under the doctrine of *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978), and as a

---

[8] Defendants argue, in a footnote, that the fifth cause of action for failure to intervene should be "dismissed for failure to state a claim" because Plaintiff "does not explicitly state which Constitutional Amendment [D]efendants violated." (Dkt. No. 26-1, at 18 n.3). Defendants cite no case law to support this assertion. Defendants have not moved to dismiss Plaintiff's Eighth Amendment excessive force claims, and the Court sees no reason why Plaintiff's failure to intervene claims would not also arise under the Eighth Amendment (as Plaintiff concedes they do in his opposition brief). (*See* Dkt. No. 31, at 8). Defendant's request to dismiss Plaintiff's failure to intervene claim is therefore denied. *See Clarke v. Antonini*, No. 21-cv-1877, 2022 WL 4387357, at *5, 2022 U.S. Dist. LEXIS 171707, at *13 (S.D.N.Y. Sept. 22, 2022) (denying motion to dismiss where defendants "fail[ed] to provide any arguments or legal authority supporting their position"); *accord Bisson v. Reppel*, No. 13-cv-245, 2014 WL 3386059, at *4, 2014 U.S. Dist. LEXIS 92954, at *10 (D. Vt. July 9, 2014).
Defendants also argue that Plaintiff's Fourteenth Amendment substantive due process claim must be dismissed—but there is no claim for a violation of substantive due process in the Complaint. (*See* Dkt. No. 26-1, at 17).

"policy making officer of the facility[.]" (Dkt. No. 1, ¶¶ 101, 103). But *Monell* liability is "limited to local government units which are not considered part of the State for Eleventh Amendment purposes." *Id.* at 691. *See also Levine v. New York State Police*, No. 21-cv-1181, 2022 WL 1987845, at *17-18, 2022 U.S. Dist. LEXIS 100188, at *47 (N.D.N.Y. June 6, 2022) (dismissing *Monell* claims against state police superintendent and investigator); *Alves v. New York State Dep't of Corr. & Cmty. Supervision*, No. 24-cv-425, 2025 WL 1210939, at *10, 2025 U.S. Dist. LEXIS 45256, at *25 (W.D.N.Y. Mar. 12, 2025) (holding that plaintiff could not "maintain a *Monell* claim against DOCCS, OMH, or any employee of those agencies in his or her official capacity"), *report and recommendation adopted*, No. 24-cv-425, 2025 WL 1207777, 2025 U.S. Dist. LEXIS 79297 (W.D.N.Y. Apr. 25, 2025). Similarly, *Monell* liability does not attach to an individual state official sued in their individual capacity, such as Defendant Gee. *See Amory v. Katz*, No. 15-cv-1535, 2016 WL 7377091, at *5, 2016 U.S. Dist. LEXIS 175342, at *12-13 (D. Conn. Dec. 19, 2016) (citing *Kentucky v. Graham*, 473 U.S. 159, 167–68 (1985)).

To the extent that the eighth cause of action can be read to assert an Eighth Amendment deliberate indifference or excessive force claim against Defendant Gee, the Court agrees with Defendants that any such claim must be dismissed. (*See* Dkt. No. 26-1, at 24-30). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to his serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (alteration adopted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). That standard "includes both subjective and objective components." *Id.*; *see also Clark v. Valletta*, 157 F.4th 201, 209 (2d Cir. 2025). To satisfy the subjective component, an "official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

It is also "well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Thus, "a Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" *Austin v. Pappas*, No. 04-cv-7263, 2008 WL 857528, at *2, 2008 U.S. Dist. LEXIS 25900, at *6 (S.D.N.Y. Mar. 31, 2008) (quoting *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). If a defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). "Accordingly, for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (holding that "there is no special rule for supervisory liability").

Here, Plaintiff does not allege that Defendant Gee was either involved in or aware of Plaintiff's alleged assault or any related injuries. He does not allege that Defendant Gee was aware of any facts from which Defendant Gee could have inferred a substantial risk of serious harm to Plaintiff. *See Clark*, 157 F.4th at 209. Plaintiff has alleged, at best, "a mere 'linkage' to" allegedly unlawful conduct through the chain of command, which is insufficient to show Defendant Gee's personal involvement in that unlawful conduct. *See Dodson*, 454 U.S. at 325.

Accordingly, Plaintiff's eighth cause of action against Defendant Gee is dismissed. *See Diaz v. Bowles*, No. 20-cv-997, 2023 WL 2631809, at *3, 2023 U.S. Dist. LEXIS 50191, at *6 (D. Conn. Mar. 24, 2023) ("A conclusory allegation that a defendant or defendants created a policy or custom under which unconstitutional practices occurred is insufficient to state an Eighth Amendment claim."); *c.f. Myers on behalf of Est. of Myers v. Davenport*, No. 21-cv-0922, 2022 WL 3017367, at *5, 2022 U.S. Dist. LEXIS 134752, at *13 N.D.N.Y. July 29, 2022) (noting that, to state an Eighth Amendment failure to protect claim against a policy-making official, the plaintiff must establish that the policy-making defendant "was aware of a risk of substantial harm to the plaintiff and—through their own actions in making a policy or failing to enact a policy— exhibited deliberate indifference and disregard for that risk").

### E.    First Amendment Claims

Defendants argue that Plaintiff's First Amendment claims must be dismissed because they are "duplicative" of his Eighth Amendment claims. (Dkt. No. 26-1, at 19-20). In the alternative, Defendants contend that Plaintiff has failed to plead a retaliation claim. (*Id.* at 20-21). Plaintiff disagrees, arguing that his request to speak with a sergeant and "his refusal to provide answers to questions" is protected speech, (*see* Dkt. No. 1, ¶ 90), and that his "violent beating" and "false misbehavior reports" constitute adverse actions, (*see* Dkt. No. 31, at 9).

Courts must approach a prisoner's retaliation claims "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (citation omitted); *accord Burroughs v. Mitchell*, 325 F. Supp. 3d 249, 280 (N.D.N.Y. 2018). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance

"non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." *Davis*, 320 F.3d at 352 (citation omitted).

In determining whether actions by prison officials constitute adverse action sufficient to state a retaliation claim, "the court's inquiry must be tailored to the different circumstances in which retaliation claims arise, bearing in mind that [p]risoners may be required to tolerate more . . . than average citizens, before a retaliatory action taken against them is considered adverse." *Davis*, 320 F.3d at 353 (internal quotation and citation omitted). In order to satisfy the causation requirement, allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id.* at 353 (citation omitted).

Defendants argue that, because Plaintiff's First Amendment claim alleges "a set of facts covered by the Eighth Amendment," the First Amendment claim "should be dismissed as duplicative." (Dkt. No. 26-1, at 20). Defendants assert that Plaintiff's First Amendment claim relies on his "allegations that 'he was immediately assaulted' and experienced 'a violent beating'" after his allegedly protected speech, and that "Plaintiff would find redress [for these actions] within Eighth Amendment protections, not the First Amendment." (Dkt. No. 32, at 11 (citing Dkt. No. 31, at 9)). Defendants identify no case law, and the Court is aware of none, holding that a First Amendment retaliation claim premised on the use of force against an inmate is "duplicative" of an Eighth Amendment excessive force claim; rather, it is "well-settled that excessive force constitutes adverse action for the purposes of a retaliation analysis." *Conquistador v. Syed*, No. 19-cv-1450, 2022 WL 17821092, at *3, 2022 U.S. Dist. LEXIS

228411, at *10 (D. Conn. Dec. 20, 2022 (quoting *Povoski v. Lacy*, No. 14-cv-97, 2017 WL

9511094, at *15, 2017 U.S. Dist. LEXIS 205851, at *44 (N.D.N.Y. Dec. 13, 2017)).

      Defendants also assert that Plaintiff "has failed to plead he engaged in any protected

speech or conduct[,] and [that] there was a causal connection between the protected conduct and

the adverse action." (Dkt. No. 26-1, at 21). As a preliminary matter, the Complaint alleges that

excessive force was "in retaliation for Plaintiff's refusal to provide answers to questions and to

his complaints about being physically abused." (Dkt. No. 1, ¶ 90).  But Plaintiff has alleged no

facts regarding any such refusal to answer questions or any complaints about being physically

abused. The Court thus considers whether Plaintiff's complaint, i.e., his "request for a sergeant"

after having been "wanded" three times, constitutes protected speech.

      Defendants argue that Plaintiff's request is not protected speech, but they have failed to

support their claim with caselaw. *See McIntosh v. United States*, No. 14-cv-7889, 2016 WL

1274585, at *26, 2016 U.S. Dist. LEXIS 44290, at *87 (S.D.N.Y. Mar. 31, 2016)

(acknowledging "there is authority in the Second Circuit for the proposition that verbal

complaints can be protected action for purposes of a First Amendment retaliation claim"). Nor

have Defendants explained why the Court could not infer a causal connection between Plaintiff's

request for a sergeant and the alleged beating that immediately followed, *see Espinal v. Goord*,

558 F.3d 119, 129 (2d Cir. 2009) ("A plaintiff can establish a causal connection that suggests

retaliation by showing that protected activity was close in time to the adverse action.").

Accordingly, on this record, the Court cannot find as a matter of law that Plaintiff has failed to

state a First Amendment retaliation claim.

      **F.**    **Fourth Amendment Claims**

Defendants argue that Plaintiff's Fourth Amendment claims related to being "wanded" must be dismissed, because "wanding" does not constitute a Fourth Amendment violation. (Dkt. No. 26-1, at 18). Plaintiff disagrees. (Dkt. No. 31, at 8).

"[I]nmates retain a limited right to bodily privacy under the Fourth Amendment." *Harris v. Miller*, 818 F.3d 49, 57 (2d Cir. 2016) (citation omitted). "The prison context does affect, however, the way that courts must analyze alleged violations of this Fourth Amendment right." *Id.* While prison inmates do not enjoy any Fourth Amendment protection against unreasonable searches within their cells, *Hudson v. Palmer*, 468 U.S. 517, 525 (1984), the Fourth Amendment does offer some protection against unreasonable searches of the person, *see, e.g., Bell v. Wolfish*, 441 U.S. 520, 558 (1979). In determining whether a particular search is reasonable, a court considers "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

An inmate bears the burden of showing that a search was unreasonable, *see Shabazz v. Pico*, 994 F. Supp. 460, 473 (S.D.N.Y. 1998), so, at the pleading stage, a plaintiff must "plead facts sufficient to give rise to a plausible inference" that the search they challenge was unreasonable under the aforementioned standards, *see Flood v. Cappelli*, No. 18-cv-3897, 2019 WL 3778736, at *9, 2019 U.S. Dist. LEXIS 135330, at *25 (S.D.N.Y. Aug. 12, 2019); *Simmons v. Cripps,* No. 12-cv-1061, 2013 WL 1290268, at *21, 2013 U.S. Dist. LEXIS 49697, at *62 (S.D.N.Y. Feb. 15, 2013), *report and recommendation adopted by* 2013 WL 1285417, 2013 U.S. Dist. LEXIS 44989 (S.D.N.Y. Mar. 28, 2013).

Here, Plaintiff's sole allegation relating to any conceivable "search" within the meaning of the Fourth Amendment is that he "was stopped and 'wanded' three times" by Defendants. (Dkt. No. 1, ¶ 32). Plaintiff does not allege, even in conclusory terms, that this search was

unreasonable; Plaintiff's passing reference to the Fourth Amendment in his fourth cause of

action makes no mention of an unreasonable search. (*Id.* ¶ 78). Therefore, Plaintiff's claims

under the Fourth Amendment related to an unreasonable search must be dismissed.

### G.    Fifth Amendment Claims

Defendants move to dismiss Plaintiff's Fifth Amendment claims, because Plaintiff has

sued only state actors. (Dkt. No. 26-1, at 21-22). Plaintiff concedes that the Fifth Amendment

"applies to federal actors, not state officials[,]" and agrees that dismissal is appropriate. (Dkt. No.

31, at 9). Accordingly, the Court dismisses Plaintiff's Fifth Amendment claims. *See Barea v.*

*State Univ. of N.Y.*, No. 05-cv-1523, 2006 WL 1911602, at *4, 2006 U.S. Dist. LEXIS 46681, at

*13 (N.D.N.Y. 2006) ("[Plaintiff] named no federal actors as defendants in this action.

Accordingly, all claims premised on violations of [Plaintiff's] Fifth Amendment Due Process

rights are dismissed.").

### H.    Equal Protection Claims

Defendants move to dismiss Plaintiff's Equal Protection claims,[9] arguing that Plaintiff

has failed to "provide an allegation of how he was treated differently than others." (Dkt. No. 26-

1, at 24).  The Court agrees. The Equal Protection Clause of the Fourteenth Amendment states

that "[n]o State shall . . .deny to any person within its jurisdiction the equal protection of the

laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "requires that the government

treat all similarly situated people alike." *Harlen Assocs. v. Incorporated Village of Mineola*, 273

F.3d 494, 499 (2d Cir. 2001) (citing *City of Cleburne*, 473 U.S. at 439). In order to establish an

equal protection violation, plaintiff must show that he was treated differently than other people in

---

[9] Inexplicably, Plaintiff asserts that he "had a right to equal protection under the law as afforded and provided by the Eighth Amendment." (Dkt. No. 1, ¶ 93). The Court notes that Plaintiff's equal protection claim arises under the Equal Protection Clause of the Fourteenth Amendment. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

similar circumstances and "that his selective treatment was motivated by an impermissible consideration such as membership in a suspect class, retaliation for the exercise of a constitutional right, or malicious or bad faith intent to injure." *Roman v. Donelli,* 616 F. Supp. 2d 299, 307 (N.D.N.Y. Oct. 10, 2007) (citation omitted).

Plaintiff is an African American. (Dkt. No. 1, ¶ 93). Plaintiff alleges, in conclusory terms, that "[e]xcessive force was used in retaliation for Plaintiff's speech and race[,]" and that a "substantial and motivating reason for the use of excessive force" was to "abuse their authority or power by taking advantage of some weakness or disability or misfortune of Plaintiff[.]" (*Id.*, ¶¶ 94-95).[10] Plaintiff provides no factual allegations from which the Court could plausibly infer that Defendant's actions were motivated by discriminatory animus. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Clyburn v. Shields*, 33 F. App'x 552, 555 (2d Cir. 2002) ("[C]laims of race-based discrimination under the Equal Protection Clause ... require that intentional discrimination be alleged in a non-conclusory fashion."); *Thomas v. Pingotti*, No. 17-CV-0300, 2017 WL 3913018, at *7, 2017 U.S. Dist. LEXIS 144173, at *15 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause."). Accordingly, Defendants' motion to dismiss Plaintiff's equal protection claims is granted.

## I.    Punitive Damages

---

[10] To the extent that Plaintiff intended to raise a disability discrimination claim, Defendants correctly note that Plaintiff has not alleged that he has a disability within the meaning of the ADA. (*See* Dkt. No. 26-1, at 24). *See also Costin v. Glens Falls Hosp.*, 103 F.4th 946, 953 (2d Cir. 2024) ("To establish a prima facie violation" under the ADA[,] "it must be shown that: (1) the plaintiff is a qualified individual with a disability; (2) the defendant is an 'entity subject to the [A]cts'; and (3) the plaintiff 'was denied the opportunity to participate in or benefit from . . . services, programs, or activities' or was 'otherwise discriminated against' on the basis of disability." (quoting *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016))).

Defendants move to dismiss Plaintiff's ninth cause of action for punitive damages. (Dkt. No. 26-1, at 30-31). A "request for punitive damages is not an independent cause of action." *Tate v. City of New York*, No. 16-cv-1894, 2017 WL 10186809, at *16, 2017 U.S. Dist. LEXIS 222578, at *45 (E.D.N.Y. Sept. 29, 2017) (dismissing independent cause of action for punitive damages where plaintiff's remaining claims against the corrections officers and medical personnel in their individual capacities "may warrant an award of punitive damages"). Accordingly, the Court construes Plaintiff's claim for punitive damages as a remedy, and not as a separate cause of action. Construing the allegations in the Complaint in the light most favorable to Plaintiff, Defendants' request to dismiss the punitive damages remedy is without merit. *See Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 613 (S.D.N.Y. 2013) (holding, in an excessive force case, that generally "the issue of whether to award punitive damages is an issue for the jury to decide based on an evaluation of the plaintiffs proof of sufficiently serious misconduct" (quoting *Picciano v. McLoughlin,* 723 F.Supp.2d 491, 506 (N.D.N.Y. 2010))). Therefore, the Court declines to dismiss Plaintiff's request for punitive damages.

## V.    LEAVE TO AMEND

Plaintiff requests leave to amend, particularly with respect to his equal protection claims and his claims against Defendant Gee. (Dkt. No. 31, at 5, 10-11). Under Federal Rule of Civil Procedure 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). Rule 15(a)(2) requires that a court "freely give leave when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). But a court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,

66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021). A request to amend is futile where the problem with the claim is "substantive" and "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

Here, Plaintiff's claims against the Defendants in their official capacities are barred by the Eleventh Amendment, and any attempt to amend the Complaint to salvage these claims would therefore be futile. However, because it is conceivable that the Complaint's deficiencies with respect to Plaintiff's other claims could be fixed with better pleading, the Court grants Plaintiff's request for leave to file an amended complaint.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendants Swan, Hargett, and Gee's motion for partial judgment on the pleadings (Dkt. No. 26) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Defendants Swan, Hargett, and Gee's motion for partial judgment on the pleadings (Dkt. No. 26) is **DENIED** as to Plaintiff's Eighth Amendment claims for excessive force (Fourth Cause of Action) and failure to intervene (Fifth Causes of Action), and **DENIED** as to Plaintiff's First Amendment retaliation claim (Sixth Cause of Action), and the Court construes the "Ninth Cause of Action" for punitive damages as a remedy; and it is further

**ORDERED** that Defendant's motion for partial judgment on the pleadings is otherwise **GRANTED**; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if the Plaintiff does not file an Amended Complaint within thirty (30) days of this Order the Court Clerk is directed to terminate Defendant Gee from this action and the case will be referred to the Magistrate Judge for a scheduling Order.

**IT IS SO ORDERED.**

February 19, 2026
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge